Good morning. I'm John Ward here on behalf of Mr. Garcia, and I'm here to talk to you further about Gibson and Calgic, a former, now discarded version of Calgic 2.50.01. In this case, the trial judge in California, wisely in the event, declined to add the preponderance of the evidence gloss to 2.50.01. So in that sense, this case differs from Gibson. It differs, in my mind, in another decisive aspect, in the sense that what was used here as a proxy under 2.50.01 was a prior offense of which, for which Mr. Garcia was acquitted. And my – well, there are basically two arguments in this case. That even apart from the preponderance of the evidence standard, the Calgic version used back in 1999 was unconstitutional in the sense that it offered an impermissible alternate route to conviction. Mr. Ward, you've got an additional problem here. The district court – or your trial court only gave the 2.50.01 instruction, did not give the 2.50.10 instruction. The preponderance instruction. Right. You haven't – you don't have a Gibson problem here. Well, I think I – I – You're on all twos with Gibson. Well, I think I have – I have Gibson and I have the other wrinkle, which is what I want to talk to you about today, which is the fact that the proxy that was used was prior allegations for which he was acquitted. In other words, the only prior crimes evidence that was submitted in this case was the – the Tiffany episode for which Mr. Garcia was acquitted. But that doesn't – let's take a look at that for a minute, because I was trying to figure out the analysis here. An acquittal does not mean that he's innocent. It means that the jury was unable to conclude by proof beyond a reasonable doubt that he was guilty. If the jury had been told that they could find by preponderance of the evidence and then use that as evidence of propensity in considering proof beyond a reasonable doubt of the crimes on trial, how is the Double Jeopardy Clause offended by that? Well, I think the case that really illuminates it is Ashe v. Swenson in the sense that – and also Dowling, even though Dowling goes the other way – in the sense that if in a prior proceeding the ultimate issue is resolved, then those facts cannot be relitigated. But the issue in Ashe was identity, because there was a significant problem with regard to the – who the robber was. Here, is there a difference where the – there's no question as to identity. The question is whether or not the act occurred. And that's what is judged by different standards of proof.  But what the Justice imposed was this assuming that evidence, evidence is satisfied  the evidence. And they accept that, except that because – and this is why Gibson is so important is because it's unambiguously true that under the discarded version of 2.50.01, Crime A can be a proxy for the normal route to proof, which is proof of every element of the offense, beyond a reasonable doubt, blah, blah, blah, blah, blah. In this case, they offer Crime A and tell the jury, if you're convinced, beyond a reasonable doubt, since no other standard of proof was given, that Mr. Garcia committed Crime A, then that is all you need to convict him of Crime B. Now, Mr. Garcia was acquitted of Crime A. If – if Crime A stands for a proxy for Crime B, then telling the jury if he committed Crime – if you're convinced that he committed Crime A, then he committed Crime B is the same thing as putting him in jeopardy again for Crime A. It's the functional equivalent. And that, to me, is the problem. I understand your point. Mr. Ward, let me ask you further. I thought I read somewhere, and I have to say, one of the problems of grouping all these cases is sometimes it's hard to keep the facts straight of the four or five cases. Honestly, I've been dealing with 250.1 since 1998, and it becomes a blur. Yeah, exactly. It helped me with the senior moment then. The question I have for you is, I thought I read somewhere in the record that the jury would tell the jury that the defendant had been acquitted of the prior offense. And did that, in fact, occur? To the best of my recollection, it did. All right. So if the jury knew, then in terms of trying – and they were only given the one instruction, then doesn't that weaken your argument?  I think this is a straight double jeopardy collateral Ash v. Swenson problem. In other words, you can't put a – I mean, you can't put a person on trial twice for the same offense. Because of this instruction, that's what happened here. In other words, if we're all on the same page about the fact that this was a bad inference, they shouldn't have been allowed to do this, then what they were given, what they were given as their tool to do this was not some allegation or some prior conviction. Okay? That creates a whole raft of other problems that you've been discussing all morning. What it creates is he's been found not guilty of that offense. Now they're taking that same offense and saying it can be used here again to convict him. When you find beyond a reasonable doubt that he did it. Crime A. Yeah. But another jury has already found beyond a reasonable doubt that he didn't do it. So it isn't a case where you're told you can find by preponderance of the evidence that he did Crime B so that you can use that as an element in finding – I mean, Crime A so he did Crime B. They're saying you must find beyond a reasonable doubt that he did Crime A, then you can use it to show that he did Crime B, but he's already been acquitted of Crime A. Exactly. That's the problem. So, I mean, Gibson identified this preponderance problem. I'm offering you – I'm proposing that there's another problem in this case, equally serious, that because of the – why in the world they ever seized upon this language and said – rather than just in the Federal courts, I think what's done is to say you can consider – and what they do now in California is they say you can take this propensity evidence and you can consider it with all the other evidence in the case, you know, and use it, blah, blah, blah, blah, blah. But you still have to find by proof beyond a reasonable doubt.  They never did that. And they still don't do that. I mean, well, they do it to some extent in California now. It's much better than it was before. But they still – at least back then, they insisted on this language that you may – if you find that he was so disposed, you may conclude that he committed the – without any other evidence. And that's the difficulty. I also argue as a fallback position that regardless of the fact that the preponderance of evidence is missing in this case, that the mere use of Crime A as a proxy for proof beyond a reasonable doubt violates Winship. Would you agree that had Crime A been used by a preponderance standard and had both of the instructions been given and the jury told that they had to find the elements of the instant offense by proof beyond a reasonable doubt, that there would be no double jeopardy problem? Did I lose you in my question? If the jury was told that if they found Crime A by a preponderance, right, they could use it as a proxy. Well, you use less – You don't like that language. I don't like your word proxy.  Let me try it again. All right. I'm sorry. The jury is told two things about the prior crime. First, he was acquitted. And secondly, if you find nonetheless by preponderance of the evidence that he committed Crime A, you may consider that as propensity with regard to Crime B, but you must find Crime B by proof beyond a reasonable doubt as to each element. Oh, that's – I think that's dowling. I mean, so you would agree that in that case, then dowling, then there wouldn't be a double jeopardy problem. It would be hard to argue that. If they said, look, here's this other thing. He was acquitted. True. But you can look at that, and if you find by the – I'm just sort of – I think – let me see if I'm mirroring it back correctly. Yeah. If you find by the preponderance of the evidence that he molested Tiffany, I believe her name was, then you can use that along with all the other evidence in determining whether or not, but you must find by proof beyond a reasonable doubt. Each of the elements of the present. I think that would be okay. Okay. Yeah. All right. But that's – this is a strange sort of – kind of a unique juxtaposition. The juxtaposition is that's not what happened here, because 2.50.01 required beyond a reasonable doubt as to who it may. Exactly.  There was no preponderance of the evidence. There was no preponderance. The trial judge, I think sensing that there was a problem with the preponderance, refused to give it wisely. Okay. Counsel, now I'm a little confused, so you can help me out of this. So your objection is that the trial judge created a standard of proof too high. No. Because he asked them to prove crime A by a – beyond a reasonable doubt rather than by a preponderance of the evidence. No. I think that he – he wisely avoided one problem, but fell into a – another problem was there that really wasn't addressed, which was the core of 2.50.01, which is that you can use crime A as a placeholder, or whatever word you might find an objectionable proxy would say, for crime B when there's been an acquittal, because then the functional equivalent of that use is – constitutes double jeopardy. So, okay. If that's right, then doesn't that change your answer to Judge Tallman's hypothetical? As I understood, you said that under Judge Tallman's hypothetical, let me see if I've pulled and I have jet lag. Yeah. If you instructed the jury that they could find preponderance of the evidence that there had been a prior incident, that they might use that as evidence of a propensity, but they would nevertheless have to find all of the elements of the current crime beyond a reasonable doubt. And as I understood, your answer to that was – to Judge Tallman was that would likely be okay. Well, that seems to be what Dowling says. In Dowling, what happened was they introduced evidence. This was a ski mask bank robbery, and they introduced evidence that after the bank robbery, a man identified as Dowling robbed a woman with a ski mask. Dowling was acquitted of that second offense. And the Supreme Court said, well, in the bank robbery case, it came in under 401 as identification evidence by the preponderance. And they said – what they were really dealing with then was the collateral estoppel component. And they said, that's okay. And if I heard Justice Tallman correctly, Judge Tallman correctly, that's what your hypothetical is, I think. Yeah. I think it's Dowling. Yeah. Yeah. But what we have here is not Dowling. We have ultimate issue decided in Case A didn't do the Tiffany A crime. In Crime B, if you find beyond a reasonable doubt that he did the Tiffany A crime, he's guilty without anything else of Crime B. It's this – it's that. And whether there could have been some other instructions or whether the prior acquittal protects him absolutely, I don't know. All I know is that what happened here violated double jeopardy. And do you think that that error was cleared or attenuated by the judge's instruction to the jury that he had been acquitted on the first crime? Well, no. I think it – because I think the problem was a structural problem. The problem was the second use of Crime A as the functional equivalent of Crime B. Double jeopardy, plain and simple. Plain and simple. Yeah. That's – okay. Thank you. Thank you, Mr. Warren. Mr. Riley. May it please the Court. Justin Riley on behalf of the appellee. As an initial matter, I think I'd like to point out that – excuse me. The clearly established problem with the double jeopardy argument is that the Supreme Court, in the case that says the propensity evidence is – violates double jeopardy as used in this context. But Dowling – I mean, Dowling and Ash, they're not propensity cases, but clearly they do address the distinction between proof of criminal liability for the offense versus proof of modus operandi or identity and permit evidence by a preponderance even where there has been an acquittal. That's Dowling. The jury couldn't find that he invaded the woman's home, and so they acquitted him on the subsequent home invasion burglary charge, but the bank robbery jury was nonetheless permitted to hear the evidence of the home invasion because the M.O. was the same to determine whether or not he was, in fact, one of the bank robbers. And the Supreme Court said that's not a double jeopardy violation. Right. Right. And my argument is that it's not contrary to Dowling. The State Court's determination in this case is not contrary to Dowling because – Because it's a different burden of proof in Dowling as to the other act. As Justice Breyer pointed out, it's a higher standard of proof, and it's a little counterintuitive to think that the Supreme Court would have a problem with a higher burden of proof. But isn't what happened – I think what counsel is complaining about in double jeopardy is that the precise same question as to crime A was put to the second jury in determining whether crime B was put – was committed. The first jury, having found that crime A didn't occur, or anyway, was acquitted of it. And I think that's – as Appellant points out, especially in his reply brief, I think that that is why the resolution of these two issues rests on whether the challenge jury instruction allowed the jury to convict Appellant of the charge of offenses without finding each element of the charge offenses true beyond a reasonable doubt. The State Court and the district court below rejected these claims because in light of the remaining instructions and in reading the jury instructions as a whole, found that the instruction did not offend due process. Also, the courts found that it was not reasonably likely that the jury unconstitutionally misapplied the instruction. And this was a reasonable application of the principles set forth in Estelle v. McGuire. Appellant attempts to characterize the issue here as identical to the Gibson v. Ortiz situation in that the challenge – Kennedy did have in common with Gibson v. Ortiz, as I understand your argument, since Calgic 2.0 and 2.06 and 2.61 were given, then the jury heard reasonable doubt, reasonable doubt, reasonable doubt as to every element several times. And therefore, you can't take an error under 2.501, 2.50.01, and consider that that changed the result in the case. But in Gibson, those same instructions were given, 2.0, 2.06, 2.61. This case is a lot different than the cases we've just heard here today in that Appellant is not arguing that the burden of proof was shifted with regard to preponderance versus reasonable doubt. We're not dealing with that issue. We're not dealing with that. We're dealing strictly with double jeopardy. Right. In the context of whether or not this instruction told the jury that they could find the Appellant guilty of the charged offenses solely and without any other evidence based on the prior offenses. My argument is that the instruction does not do that at all. And in reading this instruction in light of the other instructions, it's clear that no reasonable juror would have interpreted it that way. And here's why. First of all, Appellant's argument presupposes that, if I can create this scenario, that the prosecutor walked into the courtroom and said the defendant is charged with 288. And put on solely evidence of the prior crime against Kimberly. I can't remember the name. Tiffany, I'm sorry. And puts on the evidence of Tiffany and then says the prosecution rests. And then it supposes that the jury went into the jury room and found that the charges against the current charges were true, given time frames, given specific victims, given specific touchings. It couldn't do that. The jurors in this case were instructed specifically to read all of the instructions as a whole. And we assume that here on AEDPA review. The Gibson Court could not harmonize the challenge instructions with the remaining instructions because of the burdens of proof, as we were just saying. But here the challenge instruction can be read harmoniously with the other instructions. The challenge instruction informed the jury that if they found Appellant had the propensity to commit certain sexual offenses, the jury could infer that Appellant was likely to commit and did commit the crimes of which he was accused. The remaining instructions set forth the crimes of which Appellant was accused. The instructions set forth that on or about certain dates Appellant violated California Penal Code Section 288A. The jury instructions go on to explain the elements of a violation of Section 288A. Consequently, the challenge instruction, read in light of the remaining instructions, tells the jury that if they find the propensity evidence to be true, they may infer that Appellant willfully committed a lewd act upon the body of the victim who was under 14 with a specific intent of sexual arousal, read together as the jury was instructed to do. Or in other words, that they could infer that each of the elements of the crime, the charged crime, was true. In this light, the challenge instruction doesn't offend due process, and the propensity evidence did not violate double jeopardy either, because it was properly brought in as propensity evidence to be used with the remaining evidence for the jury to infer the charged crime. This instruction said that you can find that Garcia committed the crime, quote, if he was likely to commit and did commit the crime or crimes of which he was accused. That's true. It did commit language. It's in there. Yes, that's absolutely true. But what is the definition of the crimes of which he is accused? We go to the other instructions. We define that term for the jury, because the jury is reading all of the instructions in light of the other, the remaining instructions. And the instruction, therefore, reads, instead of the crimes of which he is accused, we plug in the definition of the crimes of which he is accused. And it reads, if you find the propensity evidence to be true, you may infer that the appellant committed and did commit a willful lewd act upon the body of the victim who was under 14 with the specific intent of sexual arousal. And that is each element of the current charged offense. And so the ---- But I guess the problem I'm having with your argument, even listening to the instruction, is if the jury was told that you have to find crime A by proof beyond a reasonable doubt, and when the jury got into the jury room, they concluded that that was so, then this instruction, as you just read it, sounds to me like it's telling them you may then convict him of crime B. You may find that he did commit. Each element of the charged crimes. True. But the evidence ---- But then we go into a reasonable likelihood standard under Estelle v. McGuire, and would a reasonable juror take solely evidence of Tiffany and her prior misconduct and appellant's prior misconduct toward Tiffany and find specific dates, specific touchings, specific victim? No. The jury has to look to other evidence. Has to. It's logically impossible for the jury just to ---- for the prosecutor to come in and say, listen, appellant touched Tiffany. He's guilty of 288 here. The jury is not going to know that there's a new victim, that there's a new specific time period, which they were all in ---- they were specifically instructed to find the current charges true within specific time periods. I would find your argument much more persuasive, and maybe I'm falling into the same If you find the defendant had this disposition, you may but are not required to infer that he was likely to commit and did commit the crimes of which he is accused, had the trial judge then added, so long as you find that he committed each of the elements of Crime B by proof beyond a reasonable doubt. The jury was specifically instructed that they must find each of the elements of the crimes to be true beyond a reasonable doubt. But they were also told. Not in the specific. They were also told they could find that he did commit the crime. That's true. And if we define the crimes as the remaining jury instructions did, then we move to the Estelle v. Maguire reasonable likelihood standard, which Gibson could not get to because they found that the instruction was unambiguous because it was at loggerheads with the remaining instructions. Can you read it to me, the instruction that the court gave with regard to the burden of proof or with regard to the elements of Crime B in this case? The elements? Yes. Okay. What did he say to the jury with regard to what they had to find? I'm looking specifically in the clerk's transcript. Okay. This is a clerk's transcript. Page 144. It's California jury instruction number 4.7.1. I'm sorry. 4.7 1.5. And it reads, defendant is accused in counts one through seven of the information in the   And it reads, defendant is accused in counts one through seven of the information in the of the penal code on or about the time between September of 96 and December of 96. In order to find the defendant guilty of any crime, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act constituting that crime. And in the next instruction, very next page, it's California jury instruction 10.41, page 145 of the clerk's transcript. It says, again, defendant is accused in counts one, two, five, six and seven of having committed a violation of 288A. And then it reads, every person who willfully commits any lewd or lascivious act upon or with the body or any part of a member thereof of a child under the age of 14 years with the specific intent of arousing appealing to or gratifying the lust or passions of sexual or sexual desires of that person or the child is guilty of the crime of committing a lewd or lascivious act upon the body of a child in violation of Section 288A. So it specifically says these are the charged crimes. If we read the challenged instruction, the last couple of words of the challenged instruction, he did commit the charged crimes. And we go to this instruction and we say, well, what are the charged crimes? Because, you know, appellant is assuming that we don't have any other evidence other than past conduct. Well, since we don't have any other evidence in the hypothetical, we have to go to this to define the charged crimes. And it lays out specifically, and along with the dates, what the appellant had to have committed to be guilty of the charged crimes. Then we see that the instruction is at best and is at worst ambiguous. And then we read the rest of the jury instructions and we go to the reasonable juror standard as laid forth in the silver certifier. And then what did the prosecutor say in closing with regard to what the jury had defined? Was there, I assume, he or she addressed the proof with regard to the elements? Absolutely. The prosecutor went through each of the elements of the crime and correlated the evidence and the current charges and argued to the jury that for each one of the elements that he had to prove beyond a reasonable doubt, the evidence of the current charged crimes met that standard. Okay. Anybody else? Anything else? Thank you very much. Thank you. I'll give you another minute or so on rebuttal. I just want to remind you of the language in Gibson taken from Francis v. Franklin, that when you have language that contradicts other language, that's not good enough. You have to explain it. And here they were given two paths, one fine, one not fine. And there was no explanation of how to harmonize that, and that's really the problem. And my recollection, I did the State appeal, and my recollection of the prosecutor's argument was that nothing bad, nothing good. I mean, he didn't really save or sink this issue. Thank you. What is the language which contradicts in this case? The language which contradicts? You said, well, the language contradicts you need to explain. Oh. Well, I mean, all the talk about reasonable doubt. I mean, the problem with Gibson was the contradiction was between preponderance and proof beyond a reasonable doubt. Here it's there's no doubt. No. Oh, here the contradiction is between the proxy use of A and the proof beyond a reasonable doubt of all the elements of the current offense. That's the contradiction. Well, to me, the contradiction is allowing the jury to find that crime A was committed beyond a reasonable doubt when the prior jury has found it unacquitted. Yeah. That's the contradiction. That's the contradiction. Yeah. Thank you. All right. Thank you very much. The case just argued is submitted, and we will be adjourned until 9 a.m. tomorrow morning. All rise. Support for this session. Now stands adjourned. Thank you. Thank you.
judges: Tallman, Bybee, Bea